IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND D. HASTINGS, #135351, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-418-WHA |
| | ) | (WO) |
| KIM THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Raymond D. Hastings ("Hastings"), a state inmate

and practitioner of the Native American Religion, asserts that the defendants committed

actions during his confinement at the Easterling Correctional Facility ("Easterling") which

hindered his ability to practice his religion in violation of his constitutional rights.[1]

*Amendment to Compl. - Doc. No. 11*; *Second Amendment to Compl. - Doc. No. 20.*

Hastings also alleges that Lt. Kenneth Drake acted in a retaliatory manner and deprived

him of due process with respect to issuance of a behavior citation on June 4, 2013,

*Amendment to Compl. - Doc. No. 11* at 3; *Second Amendment to Compl. - Doc. No. 20* at

13, and subjected him to excessive force on June 12, 2013.[2]  *Compl. - Doc. No. 1* at 1-2.

---

[1]Hastings is now incarcerated at the Decatur Work Release Center.

[2]Although in some documents the plaintiff identifies the date of the use of force as June 13, 2013, a thorough and exhaustive review of all the pleadings and documents indicates that the incident occurred on the night of June 12, 2013, a Wednesday.  Thus, the court will utilize June 12, 2013, as the date of the incident for purposes of this Recommendation.

The defendants in this cause of action are Kim Thomas, former commissioner of the Alabama Department of Corrections, Gwendolyn Mosley, Kenneth Sconyers, Capt. Nathaniel Lawson, Lt. Kenneth Drake and Chaplain Anthony Askew.[3]  Hastings seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report, supplemental reports and supporting evidentiary materials addressing the claims presented by Hastings.  In these documents, the defendants deny acting in violation of the Hastings's constitutional rights.  In addition, they assert that those claims raised by Hastings alleging infringement of the right to practice his religion are due to be dismissed because prior to filing this cause of action Hastings failed to properly exhaust an administrative remedy available to him at Easterling with respect to such claims.  *Defs.' Suppl. Special Report - Doc. No. 70* at 1-2; *Defs.' Suppl. Special Report - Doc. No. 81* at 2-3.  The defendants base their exhaustion defense on Hastings's failure to file a grievance with the chaplain and/or a request for religious assistance from the Religious Activities Review Committee as permitted by Administrative Regulation No. 313 prior to filing the complaint in this case.

---

[3]It is clear from the amendments to the complaint that Hastings presents claims against the defendants in both their individual and official capacities.  "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Thus, with respect to Hastings's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant.  As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant. *Walton ex rel. R.W. v. Montgomery Cty. Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

The court issued orders directing Hastings to file responses in opposition to these reports. *Order of July 31, 2013 - Doc. No. 38*; *Order of May 5, 2016 - Doc. No. 82*. The first order specifically cautioned Hastings that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of the time for his filing a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Doc. No. 38* at 2-3. The subsequent order provided Hastings an opportunity to file a response to the defendants' supplemental report(s) in which he was advised to "specifically address the defendants' assertion that . . . [h]is claims regarding a denial of the free exercise of his religion are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a)" prior to filing this federal civil action. *Doc. No. 82* at 1 (footnote omitted).

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dep't of Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed the defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]"). Thus, the court finds it appropriate to treat the supplemental

special reports (Doc. No. 70 and Doc. No. 81) as a motion to dismiss with respect to the claims alleging infringement of religious practice/exercise.  The court likewise deems it appropriate to treat the defendants' reports as a motion for summary judgment on the claims challenging the behavior citation and the allegation of excessive force.

Upon consideration of the motion to dismiss the religious exercise claims on exhaustion grounds, the court concludes that the motion is due to be granted.  As to the motion for summary judgment, the court concludes that the motion is due to be granted in part and denied in part.

## II.  ABSOLUTE IMMUNITY

To the extent Hastings lodges claims against the defendants in their official capacities, the defendants are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought

against them in their official capacities." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

The defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity). The court will henceforth address the claims presented against the defendants in their individual capacities.

### III.  LACK OF EXHAUSTION - RELIGIOUS EXERCISE CLAIMS

In addressing the requirements of 42 U.S.C. § 1997e with respect to exhaustion, the

Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison . . .

5

> must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). The Eleventh Circuit further determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [this court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." *Myles v. Miami-Dade Cty. Corr. and Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012). Based on the foregoing, the court will "resolve this issue first" as it relates to the religious exercise/practice claims. *Id*.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir.2008) (citing *Bryant,* 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id*. (citing *Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 F. App'x at 366.

6

Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing].  *See* [*Turne*r, 541 F.3d at 1082].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.  *Bryant*, 530 F.3d at 1376." *Trias*, 587 F. App'x at 535.  Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury." *Id.*

Hastings challenges actions undertaken by the defendants which he believes hindered his right to practice his religion as protected by the First Amendment.[4]  He also alleges that the defendants, in addressing his religious activities, violated an administrative

---

[4]In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief.  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987).

regulation,[5] his due process rights,[6] deprived him of equal protection,[7] and subjected him to cruel and unusual punishment.[8]   The defendants deny Hastings's allegations and

---

[5]Hastings complains the defendants ignored the directives of Administrative Regulation No. 333, the regulation governing religious programs.  Infringements of agency rules, regulations or procedures do not, without more, amount to constitutional violations.  *Sandin v. Conner*, 515 U.S. 472, 484-486 (1995); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751-752 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same).

[6]There are two circumstances which give rise to due process protections for inmates.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  The second is when the . . .  the deprivation of a [state provided] benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (other citations omitted).

[7]"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn Univ.*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006.  An action is not unconstitutional "solely because it results in a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' . . . implies that the decision maker . . . selected. . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Admin. of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Exceptionally clear proof of discrimination is required when a plaintiff challenges the actions of correctional officials.  *Fuller v. Georgia Bd. of Pardons and Paroles,* 851 F.2d 1307, 1310 (11th Cir. 1988).

[8]An inmate seeking relief on an Eighth Amendment claim must show (1) the deprivation of a basic human necessity which is sufficiently serious, and (2) that correctional officials acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

maintain that these claims are subject to dismissal as Hastings failed to exhaust the administrative remedy provided at Easterling prior to filing this complaint as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 88-93 (2006).  Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93.  "Proper exhaustion demands compliance with an Agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . .

Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." 548 U.S. at 90-91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. 548 U.S. at 83-84; *Bryant*, 530 F.3d at 1378 (citation omitted) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam).

The Alabama Department of Corrections provides an administrative remedy for inmate complaints regarding religious matters. The administrative remedy available to Hastings at the time he filed this case was set forth in Administrative Regulation No. 313.

*Defs.' Exh. B to the July 18, 2016 Response - Doc. No. 88-2.*  Initially, the regulation provides inmates the opportunity to submit a grievance regarding any "matters of a religious nature" to the Chaplain for resolution.  *Id*. at 6 Sec. III ¶L ("Religious Dispute Resolution").  "When the Chaplain is unable to resolve a religious dispute, inmates shall use the inmate grievance procedure [allowed by this regulation and file a request for review by the Religious Activities Review Committee] for resolution of disputes regarding approval or restriction on religious practices or articles."  *Id*. at 6, Sec. III ¶L.  The regulation further advises that an "inmate grievance procedure is the complete and exclusive right created or intended to be created by this administrative regulation[.]" *Id*.; *see also id.* at 3, Sec. III ¶B End Note (Although "review of a . . . religious activity may <u>originate</u> at any level . . . [,] approval/disapproval authority is the responsibility of the Religious Activities Review Committee.").

The evidentiary materials filed by the defendants demonstrate that prior to filing this case Hastings did not properly exhaust the administrative grievance procedure available to him at Easterling regarding his ability to practice his religion while at such facility. Specifically, Hastings did not file a grievance as permitted by Administrative Regulation No. 313 regarding the claims which form the basis of the instant complaint prior to filing this case.  Although Hastings did submit one request to the Chaplain referencing a pending issue in which he sought a PVC pipe and extra soil to aid with erosion on the ceremonial grounds caused by heavy rain, he did not file a grievance regarding this request after receiving the Chaplain's response nor did he seek review of this matter by the Religious

Activities Review Committee.  Additionally, in an attempt to alleviate the erosion referenced in this request, the defendants allowed Hastings to utilize the soil he previously removed from other areas of the facility despite his obtaining the soil without requisite permission.

Hastings filed responses in opposition to the defendants' reports.  In his response to the defendants' exhaustion defense, Hastings does not dispute his failure to exhaust the remedies previously available to him at Easterling; instead, he argues that "his pleadings and motions in the case [are] evidence [of] exhaustion" and any attempt to exhaust remedies would be futile because the defendants have denied violating his constitutional rights.  *Doc. No. 72* at 4.  Hastings also argues that the PLRA's exhaustion requirement does not apply when an injury has occurred.  *Id*. at 6.  Under well-established law as set forth herein, these assertions do not excuse Hastings's failure to exhaust.  First, Hastings must have exhausted his remedies ***prior*** to filing this case.  *Terry*, 491 F. App'x at 83.  Thus, any arguments presented in this case have no impact on his failure to exhaust remedies before initiating this cause of action.  Insofar as Hastings alleges futility as a basis for his lack of exhaustion, this assertion likewise provides him no basis for relief from the exhaustion requirement.  *Higginbottom*, 223 F.3d at 1261 (assumption that exhaustion would be futile does not excuse an inmate's failure to exhaust).  Finally, regardless of the type of claim or injury suffered "the PLRA's exhaustion requirement applies[,]" *Porter*, 534 U.S. at 532, and this is true "irrespective of the forms of relief sought" by the inmate

and/or the relief available "through the administrative remedies."  *Booth*, 532 U.S. at 741 n.6.

Based on the evidence contained in the record, the court finds that Hastings failed to properly exhaust the grievance procedure provided for issues of a religious nature provided at Easterling prior to filing this case.  Specifically, Hastings did not file a grievance in accordance with the administrative regulation governing religious matters before initiating this cause of action.[9]  An administrative remedy is not now available to Hastings with respect to the claims presented in this case addressing religious practices at

---

[9]Even had Hastings exhausted his remedy with respect to the erosion issue, he is likewise entitled to no relief.  While inmates retain a constitutional right protected by the First Amendment to freely exercise their sincerely held religious beliefs, that right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996).  In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials undertook actions that ***substantially burdened and significantly interfered*** with the practice of his religion or that restricted his free exercise of a sincerely held religious belief.  *Hernandez*, 490 U.S. at 699.  It is undisputed that the defendants did not cause the erosion on the ceremonial grounds.  Moreover, Hastings has failed to show that any action or inaction of the defendants substantially burdened or significantly interfered with his ability to practice his religion on the grounds after periods of rain.  The court further notes that this claim would also fail under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") due to the lack of a substantial burden on Hastings's exercise of his religion.  *See Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) (internal quotations and citations omitted) (abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)) ("[A] substantial burden [is denied] as being significant pressure which directly coerces the [inmate] to conform his or her behavior accordingly.  More pertinent to the present action, . . . in order to constitute a substantial burden on religious practice, the government's action must be more than . . . incidental and must place more than an inconvenience on religious exercise.").  Thus, an incidental burden or a mere inconvenience to a person's religious exercise does not rise to the level of a substantial burden violative of either the First Amendment or RLUIPA.  It further appears to the court that none of the religious issues presented herein substantially burdened or significantly interfered with the ability of Hastings to practice his religion.  In addition, Hastings has failed to meet his evidentiary burden with respect to his due process, equal protection, and cruel and unusual punishment claims related to the practice of his religion.

Easterling and the court therefore concludes that these claims are due to be dismissed with prejudice.[10]

## IV.  DISCUSSION OF REMAINING CLAIMS

### A.  Challenges to Behavior Citation

1. <u>Due Process</u>.  On June 4, 2013, at approximately 4:30 a.m., defendant Drake observed Hastings on the Native American ceremonial grounds.  The ceremonial grounds were not open for use by inmates at that time.  Defendant Drake "discovered that Inmate Hastings had exited his dorm when the diabetic inmates were released for diabetic pill call and diabetic chow."  *Defendants' Exh. F. to the Supplemental Special Report - Doc. No. 37-6*.  Defendant Drake discovered that Hastings is not a diabetic and he therefore "issued [Hastings] a Behavior Citation for being in an Unauthorized Area and placed [him] in Dorm C1, Restricted Privileges Dorm."  *Id*.

Hastings challenges the due process afforded to him with respect to the behavior citation for being in an unauthorized area.  Specifically, Hastings asserts that correctional officials could not impose any punishment upon him for that rule violation absent due process.  The punishments imposed upon Hastings for this behavior citation were thirty-days loss of store, telephone and visitation privileges.  *Defs.' Exh. D to the Special Report*

---

[10]The court notes that it has previously decided religious exercise issues similar to a number of those presented by Hastings adversely to the respective inmate plaintiffs.  In these prior cases, Native American inmates incarcerated at Easterling challenged provisions of the tobacco-free herb kinnickkinnick for ceremonies rather than tobacco, the interruption of ceremonies by officers to move segregation inmates across the yard, limits on the use of fire, the location of the sweat lodge, and the presence of gang members on the ceremonial grounds.  *See Cowart v. Allen, et al.*, 2014 WL 4678306 (M.D. Ala. Sept. 18, 2014); *Coleman v. Allen, et al.*, 2012 WL 4350945 (M.D. Ala. Sept. 24, 2012); *Adams v. Mosley, et al.*, 2008 WL 4369246 (M.D. Ala. Sept. 25, 2008).

- *Doc. No. 37-4* at 3.  Hastings also contends that due to that rule infraction, correctional officials revoked his "privilege to be in the faith based dorm" and moved him to a more restrictive dorm.  *Amendment to Compl. - Doc. No. 11* at 3.  Under the circumstances of this case, Hastings is entitled to no relief on this due process claim.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S. Ct. 1254, 1263-64, 63 L. Ed. 2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41 L. Ed. 2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (footnote omitted).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486 (confinement of inmate in disciplinary segregation for thirty days does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [an inmate] suffered because of his disciplinary conviction (demotion in

status, segregation, and transfer [to a more restrictive environment]) raise no due process concerns."); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  In addition, denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  Thus, the deprivations imposed upon Hastings based on the challenged behavior citation did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.  This court must therefore determine whether the actions about which Hastings complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.  As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

(1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id*., at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*., at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id*., at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223 (2005).

With respect to [Plaintiff's] loss of canteen, telephone, and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation. The Court finds the Constitution does not grant an inmate a right in visitation, canteen, and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs*., 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that

the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, CA 06–0896–WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90–day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest).  Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges.  *Dumas v. State*, 675 So.2d 87, 88 (Ala.Crim.App.1995).

      An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life.  *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301.  The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id*. at 475, 485, 115 S.Ct. at 2296, 2301. Thus, [Plaintiff] does not have a liberty interest in canteen, visitation, and telephone privileges to which due process attaches.

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5-6 (S.D. Ala. Aug. 10, 2015).  It therefore follows that placement of an inmate in a restricted privileges dorm does not deprive him of a state-created liberty interest.  *Id*.; s*ee Sandin*, 515 U.S. at 486; *Hoskins*, 395 F.3d at 375.

Applying the *Sandin* inquiry, the court concludes that the loss of canteen, telephone and visitation privileges, and placement in a more restrictive dorm "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Hastings.  *Id*. at 485.  In light of the foregoing, it is clear that the sanctions imposed upon Hastings as a result of the behavior citation failed to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*.

at 484.  Consequently, due process did not attach to the behavior citation and summary judgment is due to be granted in favor of the defendants on this due process claim.

2.  <u>Retaliation</u>.  Hastings alleges that defendant Drake initiated the behavior citation against him in retaliation for his seeking relief regarding his religious practices.  *Amendment to Compl. - Doc. No. 11* at 5.  Defendant Drake denies this allegation and maintains that he issued the behavior citation solely due to Hastings's violation of an institutional rule.  *Defs.' Exh. D to the Special Report - Doc. No. 37-4* at 3; *Defs.' Exh. F to the Special Report - Doc. No. 37-6.*

The law is well settled that "[t]he first amendment prohibits state officials from retaliating against prisoners for exercising their right of [access to the courts]. . . .  The gist of a retaliation claim is that a prisoner is penalized for exercising a [protected] right."  *Hastings v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989) (citation omitted); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  An alleged act of retaliation in the context of a prisoner civil rights action is, however, especially complicated as inmates often attempt to "inappropriately insulate themselves from [adverse decisions or] actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084 (1996).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of state officials.  *Woods*, 60 F.3d at 1166.  "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. . . .  This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and]

pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation-- can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish . . . three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a 'motivating factor'" behind the adverse action of the defendant.  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  It is well established that merely alleging the ultimate fact of retaliation is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales v. Macklam*, 278 F.3d 126, 131 (2d Cir. 2002); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we

are careful to require non-conclusory allegations."). With respect to the causal relationship element, a prisoner must demonstrate that state officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Hastings asserts that defendant Drake initiated the behavior citation because he pursued "his rights concerning the Native American practices at Easterling[.]" *Amendment to Compl. - Doc. No. 11* at 5. Thus, Hastings satisfies the first element of his retaliation claim. *Smith*, 532 F.3d at 1277. The second element requires Hastings to demonstrate that receipt of a behavior citation "would likely deter a [prisoner] of ordinary firmness" from seeking relief from correctional officials relative to his religious practices. *Id*. This "presents an objective standard and a factual inquiry." *Id*. For purposes of this Recommendation, the court assumes, without deciding, that Hastings has met this element of his retaliation claim. Nevertheless, Hastings fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse action taken by defendant Drake.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendant[] [in initiating the behavior citation was] subjectively motivated" by Hastings pursuing his right to practice his religion. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula

set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399 (referencing the *Mt. Healthy* motive analysis). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same [adverse] decision . . . even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4." *Smith*, 532 F.3d at 1278 n.22.

Defendant Drake denies the allegation of retaliation and avers that the decision to issue a behavior citation was based exclusively on Hastings's violation of an institutional rule - being in an unauthorized area. Additionally, the only probative evidence before the court establishes that Hastings would have received a behavior citation regardless of his requesting relief for matters associated with the practice of his religion as defendant Drake determined Hastings had violated an institutional rule. Thus, the record contains no evidence that Hastings's attempts to address issues related to his religious practices constituted a "motivating factor" in the decision to initiate a behavior citation against him for his presence in an unauthorized area. Hastings offers only his conclusory allegation of

ultimate fact that defendant Drake retaliated against him due to his religious activities.  This allegation is insufficient to defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  Finally, the record before the court does not contain admissible or potentially admissible evidence from which a reasonable fact finder could infer the requisite motivating factor for purposes of establishing the causal connection nor do the circumstances, when taken as a whole, support making such an inference.  Consequently, defendant Drake is entitled to summary judgment on the retaliation claim.

3. <u>False Information</u>.  Hastings alleges that the behavior citation lodged against him resulted from a false accusation made by defendant Drake.  *Amendment to Compl. - Doc. No. 11* at 3 ("Lt. Drake claimed (lied) and said the plaintiff was on the Native American grounds at 4:24 AM on 6-4-13 at pill call[.]").  The court therefore construes the complaint to contain a false information claim against defendant Drake regarding issuance of the behavior citation.   Defendant Drake denies he fabricated the behavior citation and maintains that he issued the citation because Hastings committed a violation of institutional rules in his presence.  *Defendants' Exh. F to the Special Report - Doc. No. 37-6.*

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.  *Id.* at 942.  We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.  *Id.*  In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.  As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations.  *Hastings [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.  *Slocum* controls the disposition of the instant false information claim.

Defendant Drake asserts that the information relative to the behavior citation is correct and an accurate representation of Hastings's improper conduct.  Of specific importance, there is no admission by defendant Drake that the information utilized in levying the behavior citation against Hastings was false, incorrect or erroneous.  Hastings has failed to come forward with any evidence which indicates that defendant Drake knowingly provided or used false information during issuance of the behavior citation.  Moreover, the conclusory assertion made by Hastings regarding the potential use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief.  *Monroe*, 932 F.2d

at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that defendant Drake did not provide or rely on ***admittedly*** false information during the process related to the behavior citation. Consequently, Hastings is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of defendant Drake on the false information claim.

### B.  Excessive Force

Hastings asserts that on the night of June 12, 2013, defendant Drake summoned him to the hallway and threatened him regarding a lawsuit he had filed. *Compl. - Doc. No. 1* at 1.  Hastings acknowledged that he had filed a lawsuit against Drake and called Drake a liar. *Id*.  Drake then "slammed" Hastings into the wall head first causing him to lose consciousness and fall to the floor. *Id*. at 2.

1. <u>Qualified Immunity</u>.  With respect to Hastings's excessive force claim against defendant Drake in his individual capacity, the defendant argues he is entitled to qualified immunity. "Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell [v.*

*Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)].   In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.'  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)."  *Bowden v. Stokely*, 576 F. App'x 951, 954-955 (11th Cir. 2014) (per curiam); "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate.  *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]."  *Bowden*, 576 F. App'x at 956. Accordingly, this court will consider whether Hastings's allegation that defendant Drake maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

2.  <u>Excessive Force</u>.  Claims alleging excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted).  With respect to the objective

component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth

Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]" *Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct.1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)." *Bowden*, 576 F. App'x at 953.

Hastings alleges that on June 12, 2013, at approximately 10:00 p.m., defendant Drake approached him in the hallway and "began to threaten him about his filing civil litigation and [asking] was his name on it. Plaintiff told [Drake] yes and that he was in the wrong and a liar." *Compl. - Doc. No. 1* at 1. At this time, defendant. Drake "slammed plaintiff's head into the wall . . . so hard it momentarily knocked him out" causing him to fall to the floor. *Id*. at 2. Defendant Drake did not take Hastings to the health care unit for treatment.

Hastings maintains that as a result of this attack he suffered a "busted" right ear, bruising and swelling around his ear, and injuries to his right elbow and hand. *Id*. Since he had not been referred to the health care unit at the time of the altercation, Hastings prepared a sick call request on June 13, 2013, in which he sought treatment for his injuries.

*Defendants' Exh. A to the Special Report - Doc. No. 37-1* at 3.  Health care personnel received that request on June 15, 2013, and conducted an examination of Hastings on that date.  *Id.* at 3-5.  The attending nurse noted the subjective complaints made by Hastings, recommended that Hastings receive Tylenol for seven days for his complaints of pain, which was approved by Dr. Darbouze, *id.* at 6, and referred Hastings to the practitioner for further evaluation.  *Id.* at 5.  Hastings was seen by the site physician on June 17, 2013.  *Id.* at 9.

Defendant Drake adamantly denies Hastings's claim regarding the alleged act of excessive force.  Specifically, defendant Drake states that he "never touched Inmate Hastings" and has "never had a verbal nor physical confrontation with Inmate Hastings." *Defs.' Exh. C to the Suppl. Special Report - Doc. No. 70-3.*

Even though defendant Drake disputes the version of events presented by Hastings, this court is required at this stage of the proceedings to view the facts in the light most favorable to Hastings and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Corr. Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment).  In that vein, Hastings provides that defendant Drake slammed his head into the wall absent provocation and while he posed no threat to defendant Drake or the security of the facility.  Hastings maintains that the actions of defendant Drake caused him to suffer injuries to his right ear, the right side of his head, his right elbow and his right hand.  In sum, Hastings contends "that he was the victim of an

unprovoked attack in circumstances that did not present a risk of creating a disturbance or harming staff or other inmates. This version of the events could support an excessive force claim despite the lack of serious injuries." *Bowden*, 576 F. App'x at 954. As previously explained, defendant Drake denies Hastings's allegation regarding the assault and maintains that at no time did he threaten or use force against Hastings. Nevertheless, viewing the facts in the light most favorable to Hastings, the court concludes that defendant Drake is not entitled to qualified immunity as Hastings has alleged facts sufficient to survive his motion for summary judgment regarding the excessive force claim. *Skrtich*, 280 F.3d at 1301. Specifically, a disputed issue of material fact exists regarding whether defendant Drake used force against Hastings. Consequently, the motion for summary judgment as to the claim of excessive force presented against defendant Drake in his individual capacity is due to be denied.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED with respect to the plaintiff's claims for monetary damages lodged against them in their official capacities and these claims be DISMISSED with prejudice as the defendants are entitled to absolute immunity from such relief.

2. The defendants' motion to dismiss be GRANTED to the extent the defendants seek dismissal of the plaintiff's claims regarding his religious practices at Easterling

Correctional Facility due to the plaintiff's failure to properly exhaust an administrative remedy previously available to him at this facility prior to initiating this cause of action.

3.  The above referenced claims be dismissed with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to properly exhaust an administrative remedy previously available to him at Easterling prior to file this case.

4.  The defendants' motion for summary judgment be GRANTED with respect to the plaintiff's due process, retaliation and false information claims attacking the behavior citation and these claims be DISMISSED with prejudice.

5.  Kim Thomas, Gwendolyn Mosley, Kenneth Sconyers, Nathaniel Lawson and Anthony Askew be dismissed as parties.

6.   The motion for summary judgment filed on behalf of Kenneth Drake be DENIED with respect to the plaintiff's claim of excessive force lodged against him in his individual capacity.

7.  All claims against Kenneth Drake, with the exception of the excessive force claim lodged against this defendant in his individual capacity, be dismissed with prejudice.

8.  This case be set for an evidentiary hearing on the plaintiff's surviving claim of excessive force lodged against Kenneth Drake in his individual capacity.

It is further

ORDERED that on or before August 9, 2016, the plaintiff may file objections to the Recommendation. The plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or

general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cɪʀ. R. 3-1. *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 26th day of July, 2016.


_____
     /s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE