IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RAYMOND D. HASTINGS, #135351,    )
                                 )
    Plaintiff,               )
                                 )
    v.                       )     CASE NO. 2:13-CV-418-WHA
                                 )             (WO)
KENNETH DRAKE,                   )
                                 )
    Defendant.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint and amendments thereto filed *pro se* by Raymond D. Hastings ("Hastings"), an indigent state prisoner, challenging actions which occurred during a prior term of incarceration at the Easterling Correctional Facility.  On August 17, 2016, the court dismissed all of Hastings's claims for relief with the exception of his excessive force claim against defendant Kenneth Drake ("Drake") in this defendant's individual capacity.  *Doc. No. 92 - Order of District Judge Adopting Recommendation*.  In accordance with this order and the directive of the District Judge, the undersigned Magistrate Judge conducted an evidentiary hearing on August 23, 2016, *see* 28 U.S.C. § 636(b)(1)(B), with respect to Hastings's excessive force claim.[1] After duly considering all relevant testimony, against the backdrop of the record in this

---

[1] The parties did not file a jury demand.

case, the Magistrate Judge concludes that judgment should be entered in favor of defendant Drake.

## II.  EVIDENTIARY HEARING

The evidentiary hearing proceeded on a single issue:  Whether, on June 12, 2013, defendant Drake subjected Hastings to an unprovoked and malicious use of force by slamming his head against a wall.[2]  As evidentiary support for his claims, Hastings relies on his testimony and that of three other inmates, Gary Wayne Youngblood, Christopher Wilson and Michael Lee Jordan.  For his defense, defendant Drake provided his testimony. The defendant also referenced the declaration under penalty of perjury submitted by four inmates including two of Hastings's witnesses, Jordan and Wilson, *see Doc. No. 1-1*, and the medical records of Hastings relative to treatment provided to him on June 13, 2013, *see Doc. No. 37-1* at 2, both of which are included in the record before the court.

According to Hastings's sworn testimony, on June 12, 2013, at approximately 8:00-8:30 p.m. in the lobby-area of Dorm C1, the Restricted Privileges Dorm, he refused to accept legal mail from defendant Drake.  Drake exited the dorm but returned to the lobby area of Dorm C1 at approximately 10:00 p.m.  At that time, an unidentified officer summoned Hastings to the lobby-area where Drake confronted Hastings about naming him in legal actions.  As revealed on cross examination of Hastings, that version of events differs from the original claim made against Drake.  In the initial charging document, Hastings maintains that "on June 12, [2013], Wednesday night around 9:45 pm . . . Lt.

---

[2]Based on the testimony presented at the evidentiary hearing and exhibits filed by the parties previously made a part of the record, including Hastings's repeated assertion that the incident occurred on a Wednesday night, the court finds that the alleged use of force occurred on June 12, 2013, a Wednesday.

Kenneth Drake came to pass out legal mail[.] . . .  He called plaintiff into the hallway and began to threaten him about his filing civil litigation."  *Doc. No. 1* at 6.   Hastings then "smarted off" to Drake and called him a "liar" regarding a behavior citation Drake issued him on June 4, 2013.  Hastings testified that Drake was yelling at him and pointing his finger in his face so he turned his head away from Drake's finger.  Then Drake, without provocation, took the palm of his hand and slammed Hastings's head into the wall which caused Hastings to momentarily lose consciousness and fall to the floor.  Hastings testified that when he hit the floor he immediately regained consciousness, lifted himself off of the floor and returned to the dorm.  Hastings stated that a small amount of blood was coming out of his ear and he had a "busted elbow."  Hastings further testified he later noticed there was bruising and swelling to his right ear and his hand/wrist were sore as if he had suffered a slight sprain.

In a sick call request form prepared by Hastings on June 13, 2013, and received by health care personnel on that same date, Hastings did not mention any of the injuries alleged to have been inflicted by Drake but merely sought treatment for exposure to Round-Up while on the Native American ceremonial grounds.  *Doc. No. 37-1* at 2.  Pursuant to his request for treatment, Hastings was examined by a nurse on June 13, 2013, at 10:00 p.m. *Id*.  During the examination, Hastings did not mention any of the injuries resulting from the alleged attack by Drake nor did the attending nurse note any such injuries to Hastings. *Id*.  During cross-examination, Hastings maintained that he did not say anything to health care personnel about his injuries at this time because it was "none of their business" and it was "not important at that time."

3

Hastings called inmate Gary Wayne Youngblood as his first witness. Youngblood testified that he witnessed Drake enter the lobby of the dorm around 10:00 p.m. and observed Hastings enter that same area a few minutes after Drake. Youngblood stated that he heard yelling, then moments later saw Hastings exit the area holding the side of his head. Youngblood testified that he did not witness the alleged physical altercation between Hastings and Drake. For his second witness, Hastings called inmate Christopher Wilson to the stand. Hastings prefaced Wilson's testimony by advising the court that Wilson suffered mental health issues and was on medication to stabilize his condition, facts admitted by Wilson during his testimony. Under the circumstances present before the court, the testimony provided by Wilson lacked credibility. Moreover, it clearly appeared to the court that Hastings had recently coached Wilson regarding the content of his testimony. Finally, Hastings called Michael Lee Jordan as a witness. Jordan testified that he saw Drake push Hastings's head against the wall and Hastings holding the side of his head as he returned to the dorm. Both Jordan and Wilson, however, conceded that their declaration under penalty of perjury regarding the event at issue and filed by Hastings in support of his excessive force claim did not contain any statement regarding their having seen Drake use force against Hastings. *See Doc. No. 1-1.*

On cross-examination, Jordan testified the declaration was in his handwriting and he wrote the declaration on behalf of himself and three other inmates, including Wilson. Jordan then read the declaration from the stand. This statement reads as follows:

1) On June 12, 2013 at or about 11:00p.m. Lt: Drake (Kenneth) came in to C1 dorm to pass out legal mail.
2) Lt: Drake passed out couple legal mails an[d] then left out to lobby.

4

3)  About 5 minutes after Lt Drake left [the area,] him or some other officers called Raymond Hastings out into the lobby when [Hastings] left out [of the dorm] he was in perfect condition and compliance.
4)  After about 5 minutes went by Raymond Hastings returned into C1 dorm.
5)  Raymond Hastings went to his bed and got his face cloth and while going to bathroom we seen his right ear bleeding [a] little.
6)  He then proceeded to bathroom to clean blood from his right ear.
7)  Me and others as witnesses later on then seen his right elbow swelling and some discoloration from his skin and hand.
8)  And next day June 13, 2013 we started noticing and now see his ear blackened an[d] arm swelling with hand swol[llen].  I and others can see and imagine that he is in very good bit of pain and hurting from this incident.
9)  We as witnesses know that Raymond has been scared to report this til now but is going to sign for sick call tonite and proceed.

*Doc. No. 1-1* at 1-2.  During defense counsel's cross-examination of Jordan, Hastings, in contradiction to the testimony of his witness, interjected that he prepared the declaration for the inmates.

At the time of the incident about which Hastings complains, defendant Drake served as a correctional officer at Easterling and held the position of Shift Commander.  Drake testified that on the night of the incident he did not use force against Hastings.  Drake further testified that although he has been employed as a correctional officer for thirteen-plus years, he has incurred no internal disciplinary actions for improper use of force against an inmate and, other than this case, has not been named in any other lawsuit regarding his alleged use of excessive force.

## III. DISCUSSION

### A.  *Excessive Force Standard*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell*

*v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth

Amendment excessive force claim contains both a subjective and objective component.

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component requires that prison

"officials act[ed] with a sufficiently culpable state of mind."  *Hudson*, 503 U.S. at 8

(internal quotations omitted).  With respect to the objective component, a plaintiff must

show that "the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation."  *Id*.  In addition, "the use of excessive physical force against a

prisoner may constitute cruel and unusual punishment [even] when the inmate does not

suffer serious injury."  *Id*. at 4.

> Under the Eighth Amendment, force is deemed legitimate in a custodial
> setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm."  *Whitley v.
> Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
> (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also
> Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
> To determine if an application of force was applied maliciously and
> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson*, at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct.
> 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir.1996).  From
> consideration of such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary, or instead evinced
> such wantonness with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur."  *Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

In *Hudson*, the Court held that the use of excessive physical force against a prisoner

may constitute cruel and unusual punishment even though the prisoner does not suffer

serious injuries.  503 U.S. at 9; *But see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  Whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)).  An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *Brooks v. Kyler*, 204 F.3d 102, 103 (3d Cir. 2000) (holding there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to present an excessive force claim).

Notwithstanding that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8.  Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain." *Id*.  While the Supreme Court recently emphasized that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,'" the Court further noted that to require a showing of significant

7

injury "would permit any physical punishment, no matter how diabolic or inhuman," absent some quantum of injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7, 9). However, it is axiomatic that a plaintiff must establish a use of force to warrant relief on an excessive force claim.

### B. Evidentiary Analysis

After listening to each of the witnesses and duly considering all of the evidence, the court finds that the testimony provided by Hastings and his witnesses regarding the disputed events is not credible, whereas the court finds the testimony of defendant Drake credible.[3] The initial medical examination of Hastings conducted on June 13, 2013, at 10:00 p.m. notes no injuries to Hastings's ear, hand, wrist or elbow, and merely reflects his complaint of a rash from exposure to a commonly used weed killer. Upon completion of her examination, the attending nurse provided no treatment to Hastings for any of the injuries he allegedly suffered at the hand of defendant Drake. Hastings's flippant explanation for not seeking treatment for his injuries at this time, *i.e.*, it was not the business of medical personnel and/or he deemed it unimportant, is wholly incredible; instead, the evidence demonstrates that Hastings had not at that time suffered the alleged injuries. Thus, the court does not find credible or corroborated by credible evidence the allegations by Hastings or his witnesses that defendant Drake used force against him on June 12, 2013.

### IV.  CONCLUSION

---

[3]The demeanor of defendant Drake indicated forthrightness and believability. Moreover, the testimony of defendant Drake is supported by the objective medical evidence contained in the record. The credibility of the testimony provided by Hastings and his witnesses, when viewed in light of other evidentiary materials placed in the record by the parties, including the medical record relative to treatment provided at 10:00 p.m. on June 13, 2013, and a declaration under penalty of perjury signed by two of Hastings's witnesses, is severely undermined.

In sum, the only credible evidence presented to the court supports defendant Drake's testimony that he did not use force against Hastings.  The court readily concludes that the record does not establish any constitutionally impermissible use of force by Drake against Hastings.  Consequently, defendant Drake is entitled to judgment as a matter of law.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Judgment be entered in favor of Kenneth Drake and against the plaintiff.

2.  This case be DISMISSED with prejudice.

3.  Costs be taxed against the plaintiff for which execution my issue.

It is further

ORDERED that on or before September 7, 2016 the plaintiff may file objections to the Recommendation. The plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 24th day of August, 2016.


_____/s/  Wallace Capel, Jr._____
UNITED STATES MAGISTRATE JUDGE